GOODWIN, Administrator, and others, Respondents, vs. BODE, Executrix, and others, Appellants.

*April 15—May 9, 1922.*

*Corporations: Sale of assets to another corporation: Debtor accepting new obligation: Estoppel: Failure to remove trustee: Judgment: Persons bound: Trusts: Unexecuted instruments: Undelivered stock: Creditor receiving payments in good faith.*

1. Where a creditor of the A. Company (a corporation) accepted stock of another corporation (the B. Company) in satisfaction of notes executed by the B. Company and indorsed by the A. Company in consideration of the A. Company's promise to pay the interest on the face value thereof but not the principal, the payment of such interest was not an admission of liability for the principal, the obligations of the parties being plainly expressed by the written agreement.

2. The stock of the B. Company having been transferred to the president of the A. Company as trustee, and the A. Company having promised to pay the interest on the face value thereof and to purchase the same within twelve months after notice or demand by the trustee, the creditor was estopped from asserting her claim as against other creditors of the A. Company whose rights had intervened, by her failure to

apply for the appointment of another trustee for nine years after executing such agreement, if she were dissatisfied with the conduct of the trustee.

3. An interlocutory decree declaring the sale of the A. Company's assets to another corporation, the L. Company, valid as to creditors of the A. Company, is conclusive as to a claim against the L. Company by one of the creditors who appeared in the action against the L. Company to set aside the sale but did not litigate her demand against it, although she finally appealed from the decree, which was affirmed.

4. An unexecuted instrument stating that shares of stock issued in the name of the maker as trustee of a corporation, to which they were given in part payment of the purchase price of its assets, were the property of the corporation, and that the latter was indebted to persons named "in Schedule A thereto annexed," but which was never attached, and undertaking to sell the shares (which were not identified) and distribute the proceeds among the creditors named in such schedule, was insufficient to create a trust in favor of a creditor.

5. A resolution of the A. Company directing that a certificate for shares of stock owned by it but held by a trustee be issued to and indorsed by it to the trustee "under the terms of an agreement to be entered into with him," and that the stock be held by him as security for a debt to a creditor of such corporation, is not enforceable as a contract of pledge, the resolution being a mere preliminary declaration of intention, from which it was impossible to determine the amount of indebtedness to be secured or any of the conditions on which the stock was to be held, and the shares of stock never having been surrendered by the A. Company.

6. Where a creditor of a corporation in good faith received payments wrongfully taken from funds of another corporation, to which her debtor's assets were sold, believing they were made to her on lawful authority by one in control of the latter corporation, there is no basis for a counterclaim against her claim to recover such payments.

APPEAL from two orders of the circuit court for Milwaukee county: MARTIN L. LUECK, Judge. *Affirmed.*

This appeal presents one phase of the long litigation which began when an action was brought by minority stockholders to wind up the affairs of the Milwaukee Lithographing Company, hereinafter called Lithographing Company. The appeal is from two orders, one dismissing the

claim of Friedericke Bode as creditor of the Lithographing Company and the American Fine Art Company, hereinafter called the Art Company, and the other dismissing Mrs. Bode's claim as to 250 shares of stock of the Lithographing Company.

During 1902 and 1903 Mrs. Bode paid sums aggregating $25,000 to the Art Company and received in return notes executed by the Battle Creek Food Products Company, hereinafter called the Michigan Company, and indorsed by the Art Company to her. On February 3, 1906, 250 shares of stock of the Michigan Company, which had been given to the Art Company as security for the notes, were transferred by the Art Company to Mrs. Bode under the terms of an agreement to be stated in the opinion. In pursuance of this agreement Alfred von Cotzhausen assumed control of the stock as trustee, and all interest agreed to be paid was paid by the Art Company up to September 30, 1913.

On September 8, 1910, the Art Company executed a bill of sale of all its property to the Lithographing Company, and sometime thereafter the Lithographing Company paid to the Art Company approximately $30,000 in cash and issued, on February 28, 1911, 600 shares of its stock to Henry Lockney, as trustee, in payment for the property represented by the bill of sale.

On July 15, 1913, the directors of the Art Company passed a resolution providing that 350 of these shares be taken from the trustee and disposed of to Clara Mueller, Laura von Cotzhausen, and Louis von Cotzhausen, creditors of the Art Company to the amount of $35,000, and in respect to the remaining 250 shares provided that a new certificate for that amount be issued to the Art Company to be indorsed by the proper officers to Lockney as trustee, under the terms of an agreement to be entered into with him, for a debt owed by the Art Company to Friedericke Bode. From October 1, 1913, until September 30, 1915,

Alfred von Cotzhausen caused interest payments to be made to Mrs. Bode from the funds of the Lithographing Company. Mrs. Bode never took part personally in any of the transactions after the agreement of February, 1906. She knew of none of the various transactions carried out by the two companies.

The cross-complaint of Mrs. Bode sets out that on February 3, 1906, she entered into a written contract with the Art Company regarding the $25,000 involved, and from that time until April 25, 1910, she received her interest on said money regularly from the Art Company; that upon that day the Art Company consolidated and was merged with the Lithographing Company, and that thereafter, up to the time of the commencement of the litigation, she received her interest regularly from the Lithographing Company in accordance with the agreement of the Art Company; and in her prayer asks for judgment against the Art Company and the Lithographing Company jointly and severally, for the $25,000 plus the interest due since the commencement of the action.

To this cross-complaint there were answers by plaintiff *Goodwin* and defendants Mueller and Laura and Louis von Cotzhausen, alleging that the claims set out by Mrs. Bode had been discharged before the commencement of this action, and further alleged that the claim was barred by the statute of limitations. J. W. Flynn, receiver for the Art Company, answered and alleged in substance that he had been appointed receiver on January 8, 1918; that the order appointing him had been duly published; that Friedericke Bode had never filed a claim against the Art Company; that the time for filing had elapsed and such claim was barred; and that because of sub. 3, sec. 1775, Stats., providing that stock of one corporation shall not be held by another unless by consent of the holders of three fourths of the capital stock of each, the agreement of February 3, 1906, was *ultra vires* and void.

By way of counterclaim plaintiff *Goodwin* alleged that there was due the Lithographing Company the sum of $3,954.84, being the amount paid by von Cotzhausen to Mrs. Bode from the funds of the Lithographing Company.

Thereafter Mrs. Bode filed a claim setting out that by virtue of the agreement of February 3, 1906, and in consideration of her claim against the company, the Art Company directed its treasurer to issue to Henry Lockney 250 shares of stock to be held by him in trust for Mrs. Bode; that this amount of stock was in fact so issued; and that by reason of the foregoing, Mrs. Bode should be adjudged pledgee of the 250 shares of stock.

Plaintiff *Goodwin* and defendants Mueller and Laura and Louis von Cotzhausen made answer as follows: that Mrs. Bode had lost her claim against the Art Company by reason of her failure and refusal to prosecute the same, to the prejudice of creditors and stockholders of said company; that Mrs. Bode appealed generally from the interlocutory decree of November, 1918, and is bound by the judgment of this court affirming said decree (*Goodwin v. von Cotzhausen,* 171 Wis. 351, 177 N. W. 618), wherein judgments against Alfred von Cotzhausen, and Alfred von Cotzhausen and the Art Company, were affirmed; that by the terms of the decree it was adjudged that the Art Company received money and stock far in excess of the value of the property sold; that the judgments are unsatisfied, and that all money apportionable to the 250 shares of stock held by the Art Company should be applied in satisfaction of these judgments; that the claim of Mrs. Bode is barred by secs. 4221 and 4222, Stats.; that there never had been any consent either by the holders of three fourths of the stock of the Art Company or the Michigan Company to the holding of the stock of the Michigan Company as set out in the agreement of February, 1906, and that such agreement was *ultra vires* and void because of sub. 3, sec. 1775, Stats.

The trial court found as follows: That on February 3, 1906, the agreement mentioned above was made by Mrs. Bode, Alfred von Cotzhausen, and the Art Company; that Mrs. Bode was holder of the promissory notes mentioned previous to the agreement; that she paid to the Art Company the sum of $25,000; that on February 3d, pursuant to the agreement, she took 250 shares of the Michigan Company stock in full satisfaction of her claim and in full discharge of the notes; that pursuant to the agreement 250 shares of the Michigan Company stock were transferred to Alfred von Cotzhausen as trustee for the benefit of Mrs. Bode; that until September 30, 1913, the Art Company made all payments of interest required by the agreement; that no dividend has ever been paid on the stock of the Michigan Company; that Alfred von Cotzhausen has never ceased to be trustee and has never made any demand on the Art Company to purchase the stock as provided in the agreement; that the company has never exercised its option to purchase the stock; that there never has been any consent by the holders of three fourths of the capital stock of the Michigan Company, or any assent by the holders of a like amount of stock of the Art Company, to such holding as was proposed in the agreement; that the sale of the property of the Lithographing Company in pursuance of the interlocutory decree was valid and was made in good faith and not for the purpose of defrauding creditors; that the Lithographing Company never in any manner became liable for Mrs. Bode's claim against the Art Company; that during the time allowed for the filing of claims against the Art Company during the receivership no claim was filed by Mrs. Bode; and that the claim now being prosecuted was not filed until May 15, 1919. The court ordered that the claim of Mrs. Bode as a creditor and also the counterclaim of *Goodwin* be dismissed.

As to the claim of Mrs. Bode as pledgee, the court found that the 600 shares were issued to Lockney as trustee with-

out any agreement or declaration of trust, and were held by him in trust for the Art Company; that later 350 of these shares were, upon resolution of the directors of the Art Company, issued to Lockney and Wild, as trustees for Clara Mueller and Laura and Louis von Cotzhausen, and that the same resolution provided that 250 shares be issued to Lockney under an agreement to be entered into with him, to hold as security for the debt owed to Mrs. Bode; that no such certificate was in fact ever issued, and at the time of the commencement of this action these 250 shares of stock were held by the Art Company; that no agreement of trust as regards this stock was ever made in favor of Mrs. Bode, and she has never had possession or control of this stock, and there never had been any transfer or assignment for her benefit; that the contract of February, 1906, was not intended as security for the payment of $25,000 to Mrs. Bode by the Art Company; that the 250 shares of stock remained the property of the Art Company and became subject to the interlocutory decree; and that Mrs. Bode's claim as pledgee was not filed until October, 1920. The court held that since Mrs. Bode had taken an appeal from the interlocutory decree, she was bound by the determination of this court, and dismissed the claim. Other facts are stated in the opinion.

For the appellant *Bode,* executrix, there were briefs by *Otjen & Otjen,* and oral argument by *Henry H. Otjen* and *Ottomar Kloetzner,* all of Milwaukee.

*J. W. Flynn* of Milwaukee, receiver of the American Fine Art Company, *in pro. per.*

*Edgar L. Wood* of Milwaukee, attorney for the respondent *John* as receiver of the Milwaukee Lithographing Company.

A brief was also filed by *Arthur J. Pellette* and *Glicksman, Gold & Corrigan,* all of Milwaukee, attorneys for the respondent *Goodwin* as administrator; by *Austin, Fehr, Mueller & Gehrz* of Milwaukee, attorneys for the respond-

ent *Brosius* as executor; by *Schmitz, Wild & Gross* of
Milwaukee, attorneys for the respondents *Clara Mueller,
Laura von Cotzhausen,* and *Louis von Cotzhausen;* by
*Arthur Breslauer* of Milwaukee, attorney for the respond-
ent *Goetz;* and the cause was argued orally by *Nathan
Glicksman* and *Robert Wild.*

JONES, J.  It is very clear that by the transactions de-
tailed in the statement of facts Mrs. Bode lost $25,000,
and if the trial judge had seen his way clear to afford re-
lief in a legal manner and without injustice to creditors and
stockholders he doubtless would have availed himself of
the opportunity, and that is our attitude, but clearly there
are very serious obstacles in the way.

The first claim to be considered is that for $25,000
against the Art Company.  During all the transactions of
the Art Company and Lithographing Company under con-
sideration up to the commencement of the proceedings for
winding up the Lithographing Company, Alfred von Cotz-
hausen, son-in-law of Mrs. Bode, seems to have largely
dominated the affairs of the two companies.  He was made
her trustee in an agreement dated February 3, 1906, sub-
stantially as follows: It was recited that Mrs. Bode was
the holder of notes to the amount of $25,000 executed by
the Michigan Company and indorsed by the Art Company;
that they had not been paid at maturity; that Mrs. Bode had
accepted 250 shares of stock of the Michigan Company in
full satisfaction and discharge of the debt created by the
notes; that the said shares of stock had been transferred
to Alfred von Cotzhausen in trust for Mrs. Bode; that it
was agreed that Mrs. Bode consented to accept said shares
in full satisfaction and discharge of the Michigan Company
as maker and the Art Company as indorser, and in consid-
eration thereof the Art Company agreed to pay her interest
at six per cent. per annum, quarterly, upon $25,000, the
face value of said shares of stock, until the stock should be

disposed of as thereinafter stated. It was agreed that all dividends should be paid to the Art Company; and the Art Company further agreed to purchase within twelve months after notice or demand given by said trustee all or any of the shares held in trust, and to pay full value, and in the event of failing to pay within twelve months after such notice or demand, the trustee might, without further demand or any tender of the certificates, commence an action to recover of the Art Company, or might, without further notice, at public or private sale, dispose of said shares, and if the proceeds should be insufficient to pay the face value the Art Company would pay the deficiency. There was an addition to this agreement which for the purposes of this case need not be stated.

The language of this contract is perfectly clear that she then accepted 250 shares of the Michigan Company stock, to be held by von Cotzhausen as trustee, in satisfaction of the notes she held and of her claim against the Art Company as indorser. In consideration of such release she accepted the promise of the Art Company, not that it would pay the principal of the notes, but interest on the sum of $25,000, the face value of the shares of stock taken in exchange.

Although this agreement is criticised by appellant's counsel, he admits its validity and that the liability of the Art Company as indorser was discharged. There is no claim that it was obtained by fraud, and there seems no reason to believe that it was not entered into in good faith. Appellant's counsel claims, however, that although the liability as indorser then ceased, the indebtedness of the Art Company continued, and that this was admitted by the payment of interest for a period of seven years. Such payment of interest might well be regarded as an admission of liability for the principal, except that the obligation of the parties was plainly expressed by the written agreement. By that agreement she plainly released her demand against the

Michigan Company as maker and the Art Company as indorser and accepted instead the certificates of stock of the Michigan Company to be left in charge of her trustee. There still remained certain obligations of the Art Company, contingent, however, on certain notices to be given by the trustee as prescribed in the agreement. No such notice was ever given.

It is argued by appellant's counsel that Alfred von Cotzhausen, being the dominating head of the Art Company, was not a proper person to act as trustee, and that Mrs. Bode was not chargeable with his default. During the nine years which intervened between the execution of the agreement and the beginning of this action, von Cotzhausen continued to act as trustee, and through him Mrs. Bode held the stock of the Michigan Company. If she had been dissatisfied with his conduct of affairs she was at liberty to apply to the court for the appointment of another trustee. Meanwhile the rights of other persons, creditors of the Art Company, had intervened, and we agree with the trial court that she was estopped from asserting her claim as against them.

Counsel for respondents argue that the agreement of February, 1906, was void under sub. 3, sec. 1775, Stats., since it was established that no such consent of stockholders of each corporation as the statute requires was ever given. It is also argued that if Mrs. Bode had any claim against the Art Company it was barred by her failure to file and present it in the receivership action for winding up the affairs of the Art Company. Since we place our decision on another ground, it is unnecessary to consider these claims.

Since we hold that no cause of action in favor of Mrs. Bode had accrued or existed when her claim was filed, it becomes unnecessary to discuss at length another claim, which is that the Lithographing Company became a debtor of Mrs. Bode when the company bought and took over the

assets of the Art Company. It is argued that since the latter company turned over all its assets to the former company and remained a "mere shell," there was a merger of the two companies and that the Lithographing Company assumed all the liabilities of the other. The evidence is undisputed that there was no express agreement for any such assumption of liability. It is part of the history of this long litigation that on November 5, 1918, an interlocutory decree was made in the circuit court in which it was adjudged that Alfred von Cotzhausen had committed gross frauds upon the Lithographing Company and, among other things, had caused to be transferred to it the assets of the Art Company, and had caused the Lithographing Company to pay therefor a grossly excessive price. It is *res adjudicata* as determined in the interlocutory decree, affirmed by this court, that the sale was not void as to creditors of the Art Company. The fraud practiced by Alfred von Cotzhausen was upon the Lithographing Company, and by reason of the excessive price paid the assets of the Art Company were increased while those of the Lithographing Company were diminished to the detriment of its stockholders and creditors. In a finding by the referee it was determined:

"That the *status quo ante* as to the transactions between the American Fine Art Company and the Milwaukee Lithographing Company cannot be restored; that the latter company should keep what it obtained from the former company. That the loss and damage to be allowed to this latter company should be as in these findings otherwise provided."

This finding was sustained by the trial court. The effect was an adjudication that the transaction between the Art Company and the Lithographing Company should stand according to its terms. Although Mrs. Bode was made a party defendant and had the right to litigate any demand she might have against the Lithographing Company aris-

ing out of the transactions between the two companies, she did not attempt to do so, but finally appeared and appealed from the interlocutory decree to this court. The decree was affirmed as modified on appeal, and we deem it conclusive against her claim as a creditor of the Lithographing Company. On account of the views already expressed, we do not deem it necessary to discuss the question whether the purchase of the assets of the Art Company by the Lithographing Company constituted a merger of the two companies as claimed by appellant's counsel.

Another claim was made by Mrs. Bode growing out of the sale of the assets of the Art Company to the Lithographing Company in 1910. It is claimed that there were then two groups of creditors of the Art Company, namely, Friedericke Bode for $25,000 and Laura von Cotzhausen and her relatives $35,000. As before stated, part of the consideration undertaken to be paid for the transfer by the Art Company was 600 shares of the stock of the Lithographing Company. These shares were issued in the name of Henry Lockney, trustee, although the names of the *cestuis que trustent* are not given in the certificate.

It is claimed by appellant's counsel that a declaration of trust was executed by Lockney and a document was offered in evidence purporting to be a declaration of trust stating that the shares were the property of the Art Company and that it was then indebted to persons named in schedule "A," thereto annexed, and undertaking to sell the shares on certain conditions and to distribute the balance among the creditors named in the schedule. The document was a formal one providing for exemption of the trustee from liability and for compensation. It purported to be accepted and approved by the Art Company. This document was pinned to the minute book of the Art Company, but was not executed by any of the parties thereto. The shares were not identified, the names of the creditors were not given, and no schedule "A" was ever attached. This certificate seems

to have been lost for a time, and on the 29th of August, 1913, an affidavit was made by Lockney stating that he had received the 600 shares of stock but was unable to find the certificate, and a request was made that a new certificate be issued. It cannot be said that this vague and unexecuted instrument created a trust in favor of Mrs. Bode. If the document had been duly executed it would have been Lockney's duty to return any shares remaining unsold to the original owner, the Art Company, after the execution of his trust. Neither the Lithographing Company nor the Art Company dealt with the stock or any part of it subsequently as belonging to Mrs. Bode in trust, but the certificate for 600 shares was canceled and a certificate for 250 shares was issued to the Art Company.

There was a resolution of the board of directors of the Art Company adopted July 15, 1913, on which counsel for appellant also relies. In this resolution it was directed that:

"A new certificate for 250 shares of stock be issued to the American Fine Art Company, being the balance of 600 shares of stock now held by Henry Lockney, trustee, and to be surrendered by him, said new certificate to be indorsed by its proper officers to Henry Lockney as trustee under the terms of an agreement to be entered into with him, said stock to be held by him as security for a debt by this company to Mrs. F. Bode. The voting power of this stock is also to be held in the name of Alfred von Cotzhausen, president of the American Fine Art Company."

Notwithstanding this resolution, on August 29, 1913, the directors of the Lithographing Company adopted a resolution directing the cancellation of the old certificate and the issuing of new stock to the Art Company in two certificates for 350 shares and 250 shares, respectively. It was found by the trial court that the 250 shares thus issued to the Art Company were held by the Art Company at the time of the commencement of the action and had never been transferred.

There is no claim that the 250 shares were ever delivered to Mrs. Bode or to any one in her behalf. The Art Company never parted with its control of these shares. According to the terms of the resolution, the certificate was to be indorsed to Henry Lockney "under the terms of an agreement to be entered into with him." The terms of the proposed agreement are not specified. At most it was a mere informal preliminary resolution looking to a contract to be made in the future. The present claim is based upon the theory that there was a pledge of this stock, and the court is asked to give its aid to enforce the contract of pledge by way of specific performance. In discussing this subject the trial court said:

"The resolution upon its face appears to be a mere preliminary declaration of intention to do something under the terms of an agreement to be entered into. The terms of that agreement are not specified, and there is nothing in the resolution from which they may be inferred. Such a declaration will not be enforced as a contract. Furthermore, the amount of the debt is not specified. Neither is it made clear whether it is an existing debt or one to be created by future advances to be made by Mrs. Bode. It is very significant in this connection that as to the 350 shares to be pledged to Laura von Cotzhausen, Louis von Cotzhausen, and Clara Mueller there is no uncertainty or vagueness as to the amount of the debt, the portion of the same that is to be secured by the pledge, or the time within which it is to be paid. The plain inference is that as to Mrs. Bode some matters remained to be disposed of by future agreement before the stock would be assigned as security. It is impossible to determine from the resolution the amount of the indebtedness that was to be secured by the stock or any of the conditions upon which the stock was to be held. The resolution is too indefinite to base an action for specific performance upon it."

The decision of the trial court is sustained by the following cases, among others, cited by respondents' counsel: *Goldstine v. Tolman*, 157 Wis. 141, 147 N. W. 7; *Francis*

*H. Leggett & Co. v. West Salem C. Co.* 155 Wis. 462, 144 N. W. 969; *Moulton v. Kershaw,* 59 Wis. 316, 18 N. W. 172; *Lyman v. Robinson,* 14 Allen (96 Mass.) 242, 252; *Hunter v. Hathaway,* 108 Wis. 620, 84 N. W. 996; *Berry Brothers Ltd. v. Estate of Hooper,* 179 Mich. 67, 146 N. W. 275.

While it is to be regretted that Mrs. Bode lost the investment made by her in good faith, it is only one illustration of cases constantly recurring where honest people suffer serious financial losses through overconfidence in faithless agents. The reckless conduct of Alfred von Cotzhausen in the management of the business he dominated is all described in the interlocutory decree and the opinion of Mr. Justice OWEN in this case, *Goodwin v. von Cotzhausen,* 171 Wis. 351, 177 N. W. 618. We are convinced that her losses were sustained by reason of his misconduct and that she is not entirely free from responsibility therefor. The evidence shows that while this litigation was going on she evaded service for over three years. This may or may not have been under the guidance of Alfred von Cotzhausen. To what extent her long neglect to file and litigate her claims may have affected the rights of creditors and stockholders it would be hard to say. The trial court found that the interlocutory decree, as modified and affirmed by this court, was binding upon Mrs. Bode as to her claim as pledgee as well as upon her claim as a creditor, and with this conclusion we agree.

The counterclaim prayed for judgment against Mrs. Bode for about $4,000, alleged to have been wrongfully taken from the Lithographing Company by Alfred von Cotzhausen and paid to Mrs. Bode. It was alleged that she had knowledge of such wrongful taking and payments. The trial judge found that she received the payments in good faith believing that the payments were being made to her upon lawful authority by the Lithographing Company, and

that the counterclaim should be dismissed. We have reached the same conclusion.

*By the Court.*—Orders affirmed.

OWEN, J., dissents.

ESCHWEILER, J., took no part.